Matter of the Petition of JACOB D. H. BERGEN and DE HART BERGEN, to Render and Settle Their Account as Surviving Trustees under the Will of SEBA M. BOGERT, Deceased; JOHN W. BOGERT, Trust.

(Surrogate's Court, Kings County, February, 1917.)

Wills — provisions of — trusts — executors and administrators — when interest remains vested — distribution.

Testator at the time of the making of his will had a son and a daughter neither of whom was childless and at testator's death the son had three children and the daughter four. The

will provided: "All the rest, residue and remainder * * * I direct my executors to divide into two equal parts and one of said parts I give to my executors in trust to hold and invest and keep invested, and to collect the rents, issues and profits thereof and to pay the same semi-annually to my son John W. Bogert during his life, and from and after his death, I give the principal and any accumulated income of said trust fund to the descendants of my son John W. Bogert *per stirpes* and not *per capita*. In making division of the remainder of said trust fund after the death of my said son John, I direct that it shall be so divided that the share of my grandson, Andrew F. Bogert, shall be less than the shares of the other children of my said son John by the amount then due upon a loan of five thousand six hundred and fifty dollars made by me to my said grandson and now unpaid." Testator's son died after him, leaving him surviving two of his children who claimed the whole of the principal of the trust fund, and the administratrix of another child of said son, who after testator's death and before the death of his father died without issue, claimed the share of the trust fund to which her intestate if living would have been entitled. *Held,* that as the will of testator contained no disposition in case of a death without issue the interest of said grandchild remained vested and passed to his representatives, and that the trust fund was payable to the surviving children of testator's son and to the administratrix of the one dying without issue in proportions which remain for adjustment.

That the gifts were in common and would be in equal thirds except for the burden placed upon the share of Andrew which must be one-third of the fund less the amount due on the loan to him by testator, and when said share to Andrew has been ascertained by the deduction of the amount of his obligation the sum so retained is not to be added to the shares of the other children but remains undisposed of and must be distributed as if testator had died intestate.

PROCEEDING upon the petition to render their account as surviving trustees.

Frank G. Wild, for accounting trustees.

Surrogate's Court, Kings County, February, 1917.   [Vol. 99.

Elfers & Abberly, for Josephine I. Ackerman, as administratrix of Charles S. Bogert, deceased.

Francis B. Mullin & Bro. (Edwin Kempton, Jr., of counsel), for Andrew F. Bogert and Kitty L. King.

KETCHAM, S.   The paragraph of the will requiring construction is the following:

"All the rest, residue and remainder   *   *   *   I direct my executors to divide into two equal parts and one of said parts I give to my executors in trust to hold and invest and keep invested, and to collect the rents, issues and profits thereof and to pay the same semi-annually to my son John W. Bogert during his life, and from and after his death, I give the principal and any accumulated income of said trust fund to the descendants of my son John W. Bogert *per stirpes* and not *per capita*. In making division of the remainder of said trust fund after the death of my said son John, I direct that it shall be so divided that the share of my grandson, Andrew F. Bogert, shall be less than the shares of the other children of my said son John by the amount then due upon a loan of five thousand six hundred and fifty dollars made by me to my said grandson and now unpaid."

The next paragraph of the will, referred to only for its reflex effect upon the provision requiring attention, gives the other one-half of the residuary estate in the same form of words employed in the 5th paragraph to a daughter, Mary, for life, and to her descendants *per stirpes*.

At the time of the testator's death, the son named in the 5th paragraph had three children, and the daughter named in the 6th paragraph had four children. Neither of the testator's two children was childless at the time when the will was made.

The life beneficiary named in the 5th paragraph died after the testator's death, leaving him surviving two of his children, Andrew and Kitty. The life tenant had another child, Charles, who, after the testator's death and before the death of his father, died without issue.

The administratrix of Charles claims the share of the trust fund to which Charles, if living, would have been entitled. The two surviving children of the life tenant claim the whole fund.

Whatever may be the normal meaning of the word "descendants," one thing clearly shown in this will is that in the bright lexicon of the testator this word is so defined as to include the children of the life tenant and the grandchildren of the testator. It is equally clear that the word "descendants" not only stood in the mind of the testator for the children of the life beneficiary but was extended by the use of the words *per stirpes* to the children of deceased children. That the gift over primarily contemplated children of the life tenant appears in the sentence with which the 5th paragraph closes. "In making division  *  *  * the share of my grandson Andrew shall be less than the shares of the other children of my son John," etc. The interpretation must be as if the testator said: "When I make a gift to John's descendants, I want that gift to go in the first instance, if possible, to the kind of his descendants who are known as his children."

As stated *supra* both of the children who were named as primary beneficiaries had children at the time when the will was made.

The testator, therefore, must have contemplated the instant existence of two classes of John's descendants, viz., his children and his more remote descendants.

12

Surrogate's Court, Kings County, February, 1917.    [Vol. 99.

Where a testator so impressed makes a gift to his descendants qualifying the word by the addition " *per stirpes*," it would seem that the gift was consciously designated for such descendants as might be of equal degree or in the event of the death of any one of them was with equal intention passed on to such descendants as would take the place of the deceased one, representing him by stock and taking that which he otherwise would have taken.

This interpretation so far as it is affected by the qualification " *per stirpes* " is aptly supported by the decision in *Matter of Weinholz*, 94 Misc. Rep. 56. There the language of the will, after a disposition of a life estate to a son, was as follows: " Upon his [the life tenant's] death, I give and devise said real and personal property to the lawful issue of my said son, to be divided among said issue *per stirpes*," and there Mr. Surrogate Fowler, in an opinion interesting in its brevity and precision, held that the word " issue " was used in its primary sense of descendants generally, that the direction for the disposition among such issue *per stirpes* showed that the testatrix contemplated a possible decease of some of the children of her son, the life tenant, before the time of distribution should arrive, and intended by the use of these words (*per stirpes*) that the share of the child so dying should go to his or her children, and that the direction for disposition among the issue *per stirpes* manifested an intention that the issue of any of the children of the life tenant who died before him should take the parent's share.

In *Staples* v. *Mead*, 152 App. Div. 745, there was a trust to pay the income to the testator's wife and others during the life of the wife, and upon the death of the wife to pay the income, one-half to a daughter and one-half " unto my grandchildren living at my

Misc.]   Surrogate's Court, Kings County, February, 1917.

death and to the issue of any grandchildren who may have died leaving issue, share and share alike. * * * and upon the death of my said daughter. * * * unto my grandchildren and to the issue of any grandchild who may have died leaving issue equally *per stirpes* and not *per. capita* share and share alike.''

A grandchild, one of eleven children of the testator's daughter, died during the life of the testator's wife, without issue. Thereafter, during the life of the daughter question arose between the representatives of the deceased grandchild and the surviving grandchildren as to the disposition of the income which had been payable to the deceased grandchild. It was held that all the grandchildren took vested remainders, that the death of a grandchild before his mother, leaving issue, was a contingency upon which his estate might be diverted and vested in his issue, but that this was not an overt event upon which the vesting in him depended, and that since the only event upon which his estate could be divested did not come to pass his gift was not defeated but remained vested. The court thereupon determined that the whole income upon the share (so called) of the deceased grandchild belonged to his executors. This result was reached in the absence of any provision in the will for the payment of the income in dispute to any person or persons whatever upon the death of a grandchild without issue. It rested solely upon the finding that the grandchild died possessed of a vested estate in the principal fund, limited to him upon the death of the second life tenant, and that by reason of such vesting his estate in remainder passed to his representatives and the income thereof undisposed of in the will belonged to such representatives only as the persons presumptively entitled to the next eventual estate.

No distinction can be inserted between this decision and the case at bar. True, the subject matter there was the income, while here the principal in remainder is involved but, as shown *supra,* the award of the income in the case cited to the grandchild's estate was based wholly upon the precedent adjudication that he died with a vested interest in the principal.

It is sought to divert the force of this authority by the suggestion that its rule controls gifts over to children, issue or descendants of the testator but has no relation to remainders limited to the lawful relatives of a life tenant. No judicial recognition of this variation has been cited or found, but in any event the will before the court describes the remaindermen by their relation to the testator.

Future estates limited upon a life and devised over to the issue, children or descendants of the life tenant may well be contingent. They would not be if the remaindermen were indicated by expressions such as " my grandson Andrew," " the grandson who owes me money," and " the other children of my son John." Such nomination or description equivalent to nomination would not lend support to a conclusion that the gifts were to a class to be wholly determined at the end of the life estate, even if the beneficiaries were also mentioned as the relatives of the life tenant. Nor in such case would the conclusion be encouraged by the declaration that the share of a named legatee was to be lessened by the amount of a loan which he had received from the testator.

In gifts of future estates to persons referred to only by their kind, the actual existence of such persons at the time when the will was made is regarded as evidence that a vested estate was intended. How much more clear such intention when the remaindermen are named or described.

Misc.]    Surrogate's Court, Kings County, February, 1917.

In the case at bar the designation of the remaindermen was made as much by reference to their kinship to the testator as to their relation to the life tenant, They were the descendants of the life tenant, but they were equally described as the grandchildren of the testator, and the issue of his grandchildren.

There is nothing in the latter part of the paragraph under discussion by which the control of the case cited may be escaped. On the contrary, the provision that the " share " of one grandchild shall be diminished by the amount of his indebtedness to the testator at least intimates that the share so called was vested and not contingent. Had all three of the grandchildren been indebted to the testator and had the share of each been the subject of diminution accordingly, it could not be doubted that the testator meant to leave to each of them such kind of interest in the trust fund as would be against every event an adequate and responsive source for the payment of his or her debt. This would be accomplished by a vested estate but the manifest wish of the testator would be defeated if the estate to the primary remaindermen were contingent.

The will forbids the intention that if Andrew lived to take his share the debt would be paid but that his death would defeat the debt. True, these remainders could be divested, but only upon one event. If before the time of distribution a remainderman should die with issue, such issue would become the descendants contemplated in the will and as such would be entitled to the share which the parent, if living, would have taken. But the will contained no disposition in case of a death without issue. In that condition, the interest of the child of John remained vested and passed to his representatives. This appears both from the reasoning and the conclusion found in the case of *Staples* v. *Mead, supra.*

Surrogate's Court, Kings County, February, 1917. [Vol. 99.

The trust fund is payable to Arthur, Kitty and the administratrix of Charles, in proportions which remain for adjustment.

The gifts were in common and would be in equal thirds except for the burden placed upon the share of Andrew. That share must be one-third of the fund less the amount due on the loan made to him by the testator. It is uncontroverted that the loan is due and unpaid. If any sum is due, it is an amount equal to the principal of the debt and the interest thereon. The utmost interest date claimed is the date of the testator's death and this claim will be allowed.

A further question remains as to the disposition of the amount represented by the loan to Andrew. It is seldom that so few words as those now under construction have served to provoke so many problems. When the share of Andrew has been ascertained by the deduction of the amount of his obligation, the sum so retained is not to be added to the shares of the other children. Though Andrew's share was made less than one-third, their shares were not made more than one-third. The amount in question was undisposed of. The residue of the estate was devised by the 5th and 6th paragraphs, and of the one-half of the residue mentioned in the 5th paragraph there is a residue, represented by the amount due on the debt, which is no longer in the trust or subject to the devise in trust. The sums so retained must be distributed as if the testator died intestate.

Decreed accordingly.