In the Matter of the Estate of FREDERICK SCHAEFER, Deceased.

Surrogate's Court, New York County, June 3, 1936.

*Wingate & Cullen [Conrad Saxe Keyes of counsel], for the petitioners.*

*Alger, Peck & Grafton [Edward S. Frith of counsel], for Rose K. Shertel von Burtenbach and others.*

*Battle, Levy, Van Tine & Fowler [George Gordon Battle and Thomas Stokes of counsel], for Emma W. Schaefer.*

*A. S. & W. Hutchins [Augustus S. Hutchins and H. Randolph Anderson of counsel], for Marie T. Schaefer and others.*

*Hardy, Stancliffe & Hardy* [*Noah A. Stancliffe* and *George T. Barker* of counsel], for George E. Chatillon and others.

*Grant & Clark* [*Littleton Fox* of counsel], for Anna Schaefer and others.

*Irving I. Joseph,* special guardian for infants, Francis K. Chatillon and others.

*Nash, Britcher & Eckel* [*Joseph F. Nash* of counsel], for Hannah K. Chatillon and others.

FOLEY, S.   In this proceeding the surrogate is asked to construe the will and codicil of the testator in order to determine the persons entitled to the remainder of the trust created for the benefit of the testator's son, Albert Schaefer, who is now dead.

The testator died on May 20, 1897.   The trust provisions for Albert are found in the sixth paragraph of the codicil, the pertinent parts of which provide as follows:

" The share of my son, Albert Schaefer, shall be held by my said executors and the survivors and survivor of them in trust, however, for the following uses and purposes, to wit: To invest the same and keep the same invested and pay over the net income thereof in semi-annual payments to my said son, Albert Schaefer, during the term of his natural life; and upon his death be divided equally among his lawful children, if any he have, him surviving.

" The share of each of his children to be invested by my said executors and the survivors and survivor of them and the income thereof applied to the support, maintenance and education of such child until it attains the age of twenty-one years, at which time one-half of such share shall be paid to said child, and the balance of such share shall be invested by my said executors and the survivors and survivor of them and the income paid over to such child until it attains the age of thirty years, and then the balance of such share shall be paid to such child.

" If my said son Albert Schaefer shall die leaving no lawful issue him surviving, then and in that case, I give and bequeath the property so held in trust for him to my daughters, Amelia G. Chatillon and Freifrau Rose K. Shertel von Burtenbach, and my sons Edward C. Schaefer and George G. Schaefer, and the issue of such of them as shall have died, to be divided between them equally, the issue of any deceased child taking by representation the share only which its parent, if living, would have taken."

Albert Schaefer died in January, 1935, without issue.

It is apparent that in the primary gift of the remainder to the issue of Albert on his death there is a possible unlawful suspension of the power of alienation in that secondary trusts are provided

for, the duration of which might be measured by persons not in being at the death of the testator. These provisions, however, may be disregarded as there is an alternative valid disposition of the remainder and as the invalid provisions were only to take effect upon the contingency which has not occurred. The invalid provisions in no way affect the distribution of the remainder in accordance with the alternative valid provisions. (*Schettler* v. *Smith,* 41 N. Y. 328; *Matter of Johnson,* 233 App. Div. 587; *Church* v. *Wilson,* 152 id. 844; affd., 209 N. Y. 553.)

Of the children of the testator who are named the alternative remaindermen, only the daughter Rose survived Albert. Amelia and George survived the testator but predeceased Albert. Both left issue surviving. Edward Schaefer survived the testator but predeceased Albert and left no issue. The controversy here is as to the disposition of the share of the remainder which would have been payable to Edward had he survived the termination of the trust.

The various contentions may be summarized as follows:

(1) The gift of the remainder to Edward vested in him on the death of the testator subject only to be divested by the birth of issue to Albert or by Edward's death leaving issue during the continuance of the trust. As neither of these contingencies occurred the vested remainder was never divested, and under this contention one-fourth of the remainder would now be payable to the estate of Edward Schaefer.

(2) That the remainder was contingent and is now payable, one-fourth to the daughter Rose, one-fourth to the issue *per stirpes* of Amelia, one-fourth *per stirpes* to the issue of George, and one-fourth (that given to Edward) as intestate property to the next of kin of the testator.

(3) That the remainder is contingent, but being a gift to a class composed of the four named children and the issue *per stirpes* of any of the four children who died during the termination of the trust, the remainder is now distributable among the surviving members of the class as determined at the death of the life tenant, Albert.

The first of these various constructions will be adopted by the court. The adoption of this construction involves the determination that the gift of the remainder to Edward was vested in him at the death of the testator but subject to being divested thereafter. In employing the term " vested," the surrogate is not referring to an absolute vesting in title as of the death of the testator. The estate taken by Edward is a tentatively vested estate and is sometimes referred to as a contingently vested estate. On the death

of the testator, Edward was one of the persons in being who would share in the distribution of the remainder if the trust terminated at that time. As such, one-fourth of the remainder was tentatively vested in him.

This tentative vesting was subject to being divested under the language of the codicil, first, upon the birth of issue to Albert, and if that event did not occur, by the death of Edward *leaving issue.* ·These are the only two events which could have divested Edward's interest in the remainder. Neither of these contingencies has occurred.

The only contingency upon which the alternative gift of the remainder to the named individuals is limited, is the death of Albert without issue. Survivorship to the termination of the trust was not a contingency upon which the gift of the remainder to Edward was limited. The substitutional gift to the issue of the named remaindermen only operates as a divestiture clause as to a remainderman who dies leaving issue. (*Matter of Watson*, 262 N. Y. 284; *Stringer* v. *Young*, 191 id. 157; *Bowditch* v. *Ayrault*, 138 id. 222; *Staples* v. *Mead*, 152 App. Div. 745; *Matter of Hungerford*, 158 Misc. 317; *Matter of Jarvis*, 152 id. 252; *Matter of Leonard*, 143 id. 172.) As Albert never had issue and Edward died without issue, his interest in the remainder was never divested and one-fourth of the principal of the trust is now payable to his estate.

In *Matter of Watson* (262 N. Y. 284) the will provided for the creation of separate trusts for the benefit of certain children and grandchildren. Upon the death of each beneficiary there was a primary gift of the remainder to issue. The will then provided: " In default of such issue, I direct that the same be divided equally between said surviving children and grand-children, and the issue of any who may have died, *per stirpes.*" One of the trust beneficiaries died without issue. In giving effect to the alternative disposition of the remainder, the Court of Appeals held that the interest of each of the children and grandchildren was not defeated by the death, before the termination of the trust, of any of them without issue. The parallel between *Matter of Watson (supra)* and the problem now presented for determination is almost exact. In each instance there is a primary gift of the remainder to issue. In each instance there is an alternative gift in default of issue to definite persons. In each instance there is provision for a tentative vesting in the named or designated person, with further provision for the divestiture of the interests of the definite person upon his death leaving issue.

The decision of the Court of Appeals in *Matter of Watson (supra)* compels the determination by the surrogate that the interest of

Edward in the remainder of the trust here involved was not divested by his death, during the trust term, without issue. In *Matter of Watson* (*supra*, at p. 299) the court construed the will of the testatrix as though it had read: " Upon the death of John W. Dwight I give the principal of his share to his issue, or, in default of issue, to him absolutely." In commenting upon this determination the court stated: " While somewhat unusual for language of this kind to be used, yet it is not illegal or even surprising. We take wills as we find them, and, unless contrary to some statute, give them effect as written."

Applying the analogy of the Court of Appeals, the language of the will of the testator here must be read as if the testator had said: " Upon the death of Albert I give the principal of the trust to his issue, but if Albert dies without issue and Edward dies without issue I give one-fourth of the principal of the trust to Edward absolutely."

This determination that Edward's interest in the remainder was never divested follows the intention of the testator as expressed by the language of his will and codicil. He has disclosed his intent to primarily benefit the issue of Albert, but if it were impossible he gave the remainder to his named children or their issue. He has not expressed a design to expunge the interest of a named child who might die before the termination of the trust without issue.

The contrary constructions contended for cannot be supported. The alternative gift of the remainder to the named children cannot be construed as a gift to a class as the gift is to them *nominatim*. Nor can this alternative gift be construed as being contingent upon survivorship to the termination of the trust because in that event intestacy as to one-fourth of the remainder will result. The language of the entire will and codicil clearly discloses that the testator did not intend to die intestate as to any portion of his property.

Submit decree on notice construing the will accordingly.